UNITED STATES of America and Equal Employment Opportunity Commission, Plaintiffs-Appellees,

v.

EAST TEXAS MOTOR FREIGHT, INC., et al., Defendants-Appellees,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant-Appellant.

No. 79–2601.

United States Court of Appeals, Fifth Circuit. Unit A

April 22, 1981.

Rehearing Denied May 20, 1981.

Mullinax, Wells, Baab, Clutman & Chapman, L.N.D. Wells, Jr., Dallas, Tex., for defendant-appellant.

George E. Seay, William C. Strock, Dallas, Tex., for East Texas.

Allyson Duncan, Atty., William A. Carey, Gen. Counsel, Beatrice Rosenberg, Washington, D. C., for E.E.O.C.

Thomas P. Carney, Jr., Dept. of Justice, Civil Rights Div., Washington, D. C., for United States.

Before INGRAHAM, GEE and TATE, Circuit Judges.

GEE, Circuit Judge:

This suit—a massive one that ends today in small issues—originated in 1972, when the United States filed a pattern and practice action under Title VII, 42 U.S.C. § 2000e, et seq., against East Texas Motor Freight ("ETMF"), the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("union"), and the International Association of Machinists and Aerospace Workers ("machinists"). In 1974 the United States and ETMF entered into a consent decree, which was subsequently approved by the district court and which resolved all issues between the United States and ETMF. The machinists defaulted by failing to file an answer. In 1975 the Equal Employment Opportunity Commission ("EEOC") was added as a plaintiff. Thus, the parties involved at trial and on this appeal are the United States, the EEOC, and the union.

The United States-ETMF consent decree left unresolved the claim of the United States and the EEOC that the seniority system contained in the ETMF-union contract unlawfully perpetuated the effects of ETMF's prior discriminatory practices. The challenged seniority system operated in the following manner. ETMF, a common carrier of motor freight, employs two types of drivers: city drivers transport freight in and about the city in which their assigned terminal is located, while over-the-road ("OTR") drivers haul freight between terminals in different cities. A driver accumulates seniority from the date he begins driving as either a city or OTR driver; if he subsequently transfers to the other classification, i. e., a city driver becomes an OTR driver, he loses his accumulated seniority and is placed at the bottom of the seniority list for his new classification. Thus, the seniority system operated to discourage transfers from one driver classification to the other.

After trial without a jury, the district court found that ETMF had engaged in a pattern and practice of discriminating against black and Spanish-surnamed Americans with respect to OTR jobs.[1] Further, the trial judge found that the separate city and OTR bargaining units for seniority purposes operated to "lock in" black and Spanish-surnamed employees to their jobs as city drivers, because a transfer to an OTR position would result in a forfeiture of accumulated seniority. To remedy this situation, the district court essentially awarded class-wide retroactive seniority to city driver class members who transferred to OTR positions in accordance with the United States-ETMF consent decree.

While this decision of the district court was on appeal to our court, the United States Supreme Court decided *International Brotherhood of Teamsters,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The facts and issues in the *Teamsters* case were very similar to those in the instant case: the employer was a common carrier of motor freight; the union was the same as in this case; the discrimination charged against the company—that it discriminated against minorities with respect to OTR positions— was the same as that charged against ETMF in this case; and the seniority system in the employer-union contract was the same system at issue in this case. In *Teamsters* the Court held that, in order to protect vested seniority rights of nonminority employees, section 703(h) of the Civil Rights Act of 1964 ("Act") made lawful the application of a bona fide [2] seniority system even where it may perpetuate pre-Act discrimination. However, the Court also held that an award of retroactive seniority is the appropriate remedy for an employee who had been the victim of post-Act discrimination. Because of the district court finding that the carrier involved in *Teamsters,* T.I. M.E.-D.C., Inc., had engaged in a pattern and practice of discriminating against minorities with respect to OTR jobs, the Court held that a rebuttable presumption of discrimination existed with respect to all employees who unsuccessfully applied for road employment. Further, nonapplicants who established that they would have applied for similar employment but for their knowledge that such application would have been futile because of the employer's discriminatory policy were also entitled to the pre-

---

1. Among the differences between the city and OTR driving positions is a pay differential: OTR drivers are paid more, in some instances substantially more. While it is clear that the differences are not such as to warrant a conclusion that all drivers would prefer an OTR position—e. g., OTR drivers are required to spend extended periods away from home and family—it is generally agreed that the OTR jobs are more desirable than the city driving jobs. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 369–70, 97 S.Ct. 1843, 1872, 52 L.Ed.2d 396, 436–37 (1977).

2. A seniority system that applies equally to all races and ethnic groups, that did not have its genesis in racial discrimination, and that was negotiated and has been maintained free from any illegal purpose is "bona fide" within the meaning of § 703(h). *Teamsters,* 431 U.S. at 355–56, 97 S.Ct. at 1865, 52 L.Ed.2d at 427–28. The parties agree that the seniority system herein involved is bona fide.

305

306

sumption. In either instance the effect of the presumption is to shift the burden to the party opposing retroactive seniority "to demonstrate that the individual applicant was denied [or would have been denied, in the case of a nonapplicant] an employment opportunity for lawful reasons." *Id.* at 362–64, 97 S.Ct. at 1868–69, 52 L.Ed.2d at 432–33.

*Teamsters* made clear that retroactive seniority could not be awarded on a classwide basis but properly could be granted only to individual employees who had been victims of post-Act discrimination; further, the Court in *Teamsters* held that in no event could retroactive seniority be granted from a date earlier than July 2, 1965, the effective date of the Act. Because the instant case had not been tried with respect to individual employees and because the distinction between pre-Act and post-Act discrimination had not been made at trial, we remanded the case for individual seniority determinations consistent with the *Teamsters* decision. Further, we sanctioned use of the union's grievance procedure contained in the collective bargaining agreement as one step towards resolving disputes about retroactive seniority granted or denied to any individual employee. 564 F.2d 179 (5th Cir. 1977).

On remand the district court set provisional retroactive seniority dates for the 38 employees who chose to transfer from city to OTR positions and referred any disputes as to these to the grievance and arbitration procedures. The grievance committee proposed changes to the retroactive seniority dates for 16 of the 38 employees; the district court then rejected 12 of the proposed 16 changes. The union appeals the district court's decision with respect to the retroactive seniority dates awarded to five of the employees.

These five employees originally were hired in Houston as city drivers; four were hired before the July 2, 1965, effective date of the Act, with the fifth hired in September of 1965. Houston is not an ETMF "road domicile"; rather, all drivers hired in Houston are necessarily hired as city drivers.• Dallas and Longview, each located

some 225–250 miles from Houston, are ETMF road domiciles. From 1976 to 1978, each of the five employees accepted OTR positions in Dallas or Longview pursuant to the United States—ETMF consent decree. The district court granted all five retroactive seniority; four were given road seniority from July 2, 1965, while the fifth was awarded seniority from October 27, 1965. The union argues that the five should have been granted road seniority only from the date of their acceptance of OTR employment in 1976–78. According to the union, since all drivers hired in Houston—no matter their race or ethnic origin—necessarily are hired as city drivers, these five employees were not victims of post-Act discrimination and thus are not entitled to retroactive road seniority. In short, the union argues that they were unable to obtain OTR jobs because of geography and not because of any act of discrimination committed by ETMF. We reject this argument and affirm the trial court's decision.

As previously discussed, the Supreme Court in *Teamsters* held that class members who unsuccessfully filed post-Act applications for road positions were "presumptively entitled to relief, subject to a showing by the company that its earlier refusal to place the applicant in a [road] job was not based on its policy of discrimination." 431 U.S. at 362, 97 S.Ct. at 1868, 52 L.Ed.2d at 432. The union does not argue that these five employees would have been rejected for lawful reasons had they applied for OTR positions in Dallas or Longview in 1965; thus, it is clear that had such applications been made, the trial judge's award of retroactive seniority would be correct. The question raised is whether their failure to apply for Dallas or Longview OTR jobs dictates a different result.

This issue was addressed by the Supreme Court in *Teamsters*. Noting that "[a] consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection," *id.* at 365, 97 S.Ct. at 1870, 52 L.Ed.2d at 433–34, the

Court held that "an incumbent employee's failure to apply for a job is not an inexorable bar to an award of retroactive seniority." *Id.* at 364, 97 S.Ct. at 1869, 52 L.Ed.2d at 433. Rather, the individual nonapplicant is entitled to the same presumption accorded an applicant if he sustains "the not always easy burden of proving that he would have applied for the job had it not been for" the employer's discriminatory practices. *Id.* at 368, 97 S.Ct. at 1871, 52 L.Ed.2d at 435. With respect to the question of how this burden is carried, the Court provided the following guidance:

> While the most convincing proof would be some overt act such as a pre-Act application for a [road] job, the District Court may find evidence of an employee's informal inquiry, expression of interest, or even unexpressed desire credible and convincing. The question is a factual one for determination by the trial judge.

*Id.* at 371 n.58, 97 S.Ct. at 1873 n.58, 52 L.Ed.2d at 437 n.58.

Application of the *Teamsters* nonapplicant analysis to the instant case [3] dictates that we affirm the trial court's decision. The union does not dispute the district court's finding that it would have been futile for a black or Spanish-surnamed American to apply for an OTR position and that each of these five employees knew that such an application would have been futile. Further, no contention is made that these five employees would have been rejected for lawful reasons had they applied for OTR jobs in 1965. The sole issue is whether the trial court erred in finding that these five Houston employees would have applied for OTR jobs in Dallas or Longview in 1965 but for their knowledge that doing so would have been futile. The Supreme Court's characterization of this issue as a "factual one for determination by the trial judge," *id.*, means that the trial court's resolution of it will not be reversed on appeal unless it is clearly erroneous. Fed.R.Civ.P. 52(a). As our review of the court's finding that these employees would have applied but for their knowledge of ETMF's discriminatory practices does not leave us with a "definite and firm conviction that a mistake has been committed," *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (1948), we conclude that the finding was not clearly erroneous.

Each of the five employees involved in this appeal testified that he made at least one inquiry concerning an OTR position with ETMF, and each testified that he was told that no blacks were hired by ETMF for OTR jobs. Four of the five responded affirmatively to the question of whether they would have applied for an OTR job and moved from Houston to a road domicile had they thought they would have been hired; the fifth testified that he would have applied for an OTR job if blacks were being hired for such positions, and it is apparent from the context of his testimony that he knew the OTR job would have required him to move. All five testified that they would have given up whatever city seniority they had accumulated in order to become OTR drivers; in fact, two of the five left ETMF and their accumulated seniority for OTR jobs with other firms. Three of the five testified that when they inquired into OTR

---

3. At oral argument counsel for the union argued that the presumption of discrimination against an individual employee is available only to members of the class against which the pattern and practice of discrimination has been proven. According to the union, the relevant class entitled to the presumption is not simply the class of all black and Spanish-surnamed Americans; further, the union asserts that the class entitled to the presumption should not include persons whose inability to obtain a particular job is explained by a neutral factor such as the geographical explanation offered here.

The union is correct in that the presumption is not available to all black and Spanish-sur- named Americans; however, the rest of its argument fails. As discussed in the text, *Teamsters* explicitly defines the class entitled to the presumption: it consists of applicants and nonapplicants who can prove *that they would have applied for the job but for the employer's discriminatory practices.* Thus, the geographical explanation offered by the union does not bar application of the presumption to these employees; rather, the distance factor is one element for the trial court to consider in making the factual determination of whether these Houston city drivers would have applied for OTR positions in Dallas or Longview but for ETMF's discriminatory practices.

positions they were told that they would have to quit their jobs in Houston and go to Dallas or Longview to apply for an OTR job; they declined to take this step because they knew no blacks were OTR drivers, so that the result of taking that action would simply have been to leave them unemployed. Finally, when the United States—ETMF consent decree offered them the opportunity to take an OTR job in Dallas or Longview, all five did in fact make the move.[4]

We conclude that the finding that these five employees would have applied for and taken OTR jobs in Dallas and Longview in 1965 [5] is not clearly erroneous. Indeed, the question is a close one, and it is likely that a contrary finding would likewise have stood. Accordingly, these employees are entitled to the same presumption that they were victims of ETMF's policy of discriminating against minorities as are persons who made formal applications for OTR positions. As the union has not attempted to rebut this presumption with evidence that these five employees would have been refused road employment for lawful reasons had they applied, the district court's decision granting retroactive seniority is AFFIRMED.

---

4. In *Teamsters* the Supreme Court stated that "[a] willingness to accept the job security and bidding power afforded by retroactive seniority says little about what choice an employee would have made had he previously been given the opportunity freely to choose a starting [road] job." 431 U.S. at 371, 97 S.Ct. at 1873, 52 L.Ed.2d at 437. While the decisions of the five employees to accept OTR positions in 1976–78 says little about their willingness to have done so in 1965, when they would have had to start at the bottom of the seniority board, the move is at least some indication that they would have been willing to move from Houston at the earlier date.

5. The union does not dispute the specific date for granting retroactive seniority to the five employees; rather, its only argument is that retroactive seniority should not have have been granted at all. Thus, the question of exactly when an employee would have applied for an OTR job in Dallas or Longview is not before us.